**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| E.D. Realty, Inc., d/b/a the Historic Summit Inn<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, SMALL BUSINESS ADMINISTRATION, and KELLY LOEFFLER, in her official capacity as administrator of the United States Small Business Administration,<br><br>Defendants. | ) | Civil Action No. 2:26-cv-2212<br><br>COMPLAINT<br><br>ELECTRONICALLY FILED |

**COMPLAINT**

E.D. Realty, Inc., d/b/a the Historic Summit Inn alleges its complaint against Defendants United States of America, Small Business Administration, and Kelly Loeffler, in her official capacity as administrator of the United States Small Business Administration ("Defendants"), as follows:

**INTRODUCTION**

1. Under Section 5003 of the American Rescue Plan Act ("ARPA"), enacted in March 2021, Congress created the Restaurant Revitalization Fund ("RRF"), to be administered by Defendants through the Small Business Administration ("SBA"). This fund provided relief for certain eligible entities impacted by the COVID-19 pandemic, including specifically "inns."

2. This case concerns the SBA's unlawful attempt, nearly five years after awarding Plaintiff an RRF grant, to rescind that award based on eligibility criteria that Congress did not impose and that the SBA did not disclose when it administered the RRF.

3. Congress expressly included an "inn" among the businesses eligible to receive RRF grants under Section 5003 of the ARPA. 15 U.S.C. § 9009c(a)(4)(A).

4. The SBA's contemporaneous RRF materials likewise expressly identified "Inns" as eligible entities and, to qualify for funds, required inns only to provide documentation showing that onsite sales of food and beverage to the public comprised at least 33% of gross receipts in 2019.

5. Plaintiff E.D. Realty, Inc., d/b/a the Historic Summit Inn (the "Summit Inn" or "Plaintiff") is an "inn" under the SBA's RRF materials because it satisfied that requirement and provided the SBA with documentation demonstrating that approximately 48% of its 2019 gross receipts came from food and beverage sales.

6. Nearly five years later, the SBA notified Plaintiff that it was ineligible and demanded repayment of the entire grant. The SBA's shifting rationales for the eligibility determination not only do not appear in the statute, the application, or the SBA's contemporaneous program guidance at the time of award but are plainly inconsistent with all of the SBA's pre-award guidance.

7. The SBA's decision rendering the Summit Inn ineligible should be set aside under the Administrative Procedure Act ("APA") as it is arbitrary and capricious, ultra vires, and improperly relies on additional, unstated retroactive eligibility criteria.

## PARTIES

8. E.D. Realty, Inc., d/b/a the Historic Summit Inn is a Pennsylvania corporation with its principal place of business in Farmington, Pennsylvania.

9. Defendant United States of America, Small Business Administration ("the SBA") is an agency of the United States Government.

10. Defendant Kelly Loeffler ("Loeffler") is the Administrator of the SBA. Under Section 5003 of ARPA, Defendant Loeffler is responsible for administering the RRF. She is sued in her official capacity only.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, 28 U.S.C. §2201, and 5 U.S.C. §702, because this case presents a substantial question of federal law regarding the interpretation of Section 5003 of ARPA, where the Summit Inn is seeking a declaration of its rights and a review of agency action.

12. This Court also has authority to issue a declaratory judgment and to order any other relief that is necessary and proper pursuant to 28 U.S.C. §§2201 and 2202.

13. A substantial part of the events giving rise to this claim occurred in this district and the Plaintiff resides in this district. Venue is therefore appropriate in this district under 28 U.S.C. § 1391(e)(1).

## FACTUAL AND PROCEDURAL ALLEGATIONS

14. The Summit Inn was built beginning in 1904 and opened in 1907 and is a longstanding historic mountaintop destination located in southwestern Pennsylvania. The Summit Inn is listed by the Department of the Interior on the National Register of Historic Places based on its longstanding operation as an inn.

15. E.D. Realty, Inc. is the sole owner and operator of the Historic Summit Inn, and it has been owned and operated continuously by the Shoemaker/Voithofer family since 1964.

16. The Summit Inn is a full-service inn that offers a broad range of amenities and services to the public, including on-site dining, bar service, weddings, banquets and event catering, and lodging accommodations.

17. Consistent with the nature of its operations as an inn, food and beverage represent the largest percentage of the Summit Inn's annual gross receipts.

18. Like many hospitality businesses, the Summit Inn experienced significant revenue losses as a direct result of the COVID-19 pandemic and the related restrictions imposed on dining and event operations.

19. To help offset these losses, the Summit Inn submitted an application to the SBA on May 3, 2021 for grant assistance under the RRF.

20. "Inns" like the Summit Inn are expressly contemplated for awards under the ARPA.

21. The ARPA defines an "eligible entity" broadly to include:

> (4) ELIGIBLE ENTITY.—The term "eligible entity"—
>
> …
>
> (A) means a restaurant, food stand, food truck, food cart, caterer, saloon, ***inn***, tavern, bar, lounge, brewpub, tasting room, taproom, licensed facility or premise of a beverage alcohol producer where the public may taste, sample, or purchase products, or other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink…

15 U.S.C. § 9009c(a)(4) (emphasis added).

22. Moreover, the SBA's RRF Program Guide adopts the ARPA's definition and adds a limited, category-specific requirement applicable to inns: "Inns: To be eligible, these businesses must provide documentation with their application that on-site sales of food and beverage to the public comprised at least 33% of gross receipts in 2019" (the "33% Food and Beverage Sales Threshold"). A true and correct copy of the RRF Program Guide, attached as hereto **Exhibit A.**

23. The RRF Program Guide also expressly addresses the statutory "primary purpose" phrase. In a Note beginning at the bottom of page 3, the Guide states: "To satisfy the statutory requirement for 'place of business in which the public or patrons assemble for the primary purpose of being served food or drink,' an eligible entity must have at least 33% in 2019 on-site sales to the public." *See* Ex. A**,** RRF Program Guide at 3.

24. In its application to the SBA for RRF funds, the Summit Inn checked the applicant box for "Inn." A true and correct copy of this SBA Application is attached hereto as **Exhibit B.**

25. The RRF application form notes that an "Inn" must have "onsite sales of food and beverage to the public comprising at least 33% of gross receipts" in order to be eligible for the RRF program and required additional supporting documentation for "applicants that are an Inn" to demonstrate that the business met the 33% Food and Beverage Sales Threshold.

26. To demonstrate that it met the 33% Food and Beverage Sales Threshold, the Summit Inn attached the required information including a financial statement regarding Summit Inn's revenues for 2019 showing that ***48% of its revenue was generated from food and beverage sales***. *See* Ex. A, RRF Program Guide at 3; *see also id*. at 17 ("For Applicants that are an Inn: In addition to the documents in (1) above, documents evidencing that onsite sales of food and beverage to the public comprise at least 33% of gross receipts for 2019. These may include internally created revenue reports or accounting reports.").

27. The statute does not define an "inn" by reference to the number of guest rooms, a particular NAICS code, the existence of a separate restaurant entity, or the use of a separate Employee Identification Number ("EIN").

28. Nor does Section 5003 expressly impose a separate "primary purpose" requirement on an entity that independently qualifies as an "inn." Rather, the phrase "primary purpose of being served food or drink" appears in the statute as part of the catchall category covering an "other similar place of business." And to the extent the "primary purpose" phrase bears on eligibility at all, the SBA itself defined it in the RRF Program Guide as the 33% on-site sales test—a test the Summit Inn satisfies, with 48% of its 2019 gross receipts derived from food and beverage sales.

29. The SBA's contemporaneous RRF materials did not state that an inn must have a separate EIN from its restaurant or bar operations.

30. The SBA's contemporaneous RRF materials did not impose a maximum number of guest rooms on an inn.

31. The SBA's contemporaneous RRF materials did not state that an inn must derive a majority of its revenue from food and beverage operations.

32. Congress directed the SBA, in accepting RRF applications, to prioritize applicants' ability to use their existing business identifiers rather than requiring other forms of registration or identification. 15 U.S.C. § 9009c(c)(2)(B). The statutory scheme therefore did not condition eligibility on the creation or maintenance of separate EINs for component operations.

33. On September 19, 2023, well after the Award, the SBA, through separate correspondence in the RRF Portal, specifically asked Summit Inn whether the restaurant operated under its own EIN or the same EIN as the Inn, to which Summit Inn timely and truthfully responded: "The Inn and Restaurant are the same business in the same building under the same EIN." SBA personnel acknowledged the response ("Thank you very much for your prompt response") and raised no objection or request for clarification regarding the shared-EIN

structure, and the SBA offered no additional guidance or correspondence on the subject. A true and correct copy of this exchange is attached hereto as **Exhibit C.**

34. Thus, by no later than September 19, 2023, the SBA knew that Summit Inn operated as a single integrated business under one EIN. Yet the SBA raised no concern about the shared-EIN structure for years after learning of it, until it issued the April 2026 Rescission Letter. A true and correct copy of the letter is attached hereto as **Exhibit D**.

35. After reviewing the application and supporting documentation, the SBA approved the application on May 20, 2021 and awarded the Summit Inn an RRF grant in the amount of $995,751.51. A true and correct copy of the SBA's May 20, 2021 email notifying E.D. Realty that its Restaurant Revitalization Fund application had been approved and that it had been awarded $995,751.51 in grant funding is attached hereto as **Exhibit E**.

36. The Summit Inn used the grant to cover eligible expenses during the COVID-19 pandemic and continue operations.

37. Five years later, on April 17, 2026, the SBA notified Summit Inn that it had identified an eligibility issue that required repayment of the Award in full (the "April 2026 Rescission Letter"). Specifically, the SBA asserted that the Summit Inn was an "ineligible entity" on the grounds that:

> Hotels and motels are not eligible entities. A restaurant within a hotel/motel must have a separate Tax Identification Number. (Hotels and motels are not considered 'Inns' for the purpose of the RRF program). Because the restaurant/bar and hotel share the same EIN, the entities cannot be separated for eligibility consideration. Therefore, the business does not meet the definition of an eligible entity under the Restaurant Revitalization Fund Program. As a result, funds awarded must be returned.

*See* Ex. D, April 2026 Rescission Letter.

38. The parenthetical sentence in the April 2026 Rescission Letter mirrors an article on an SBA Zendesk help-desk knowledge base page (the "Zendesk FAQ"). The Zendesk FAQ is

not a statute, a regulation, the RRF Program Guide, or the application; it is an undated help-desk knowledge base page.

39. The relevant Zendesk FAQ article consists of a single sentence: “No. Hotels and motels are not considered ‘Inns’ for the purpose of the RRF program.” It defines none of those terms and provides no criteria for distinguishing an inn from a hotel or motel.

40. The Summit Inn applied for its RRF grant on May 3, 2021, and the SBA approved the application on May 20, 2021—both before the July 15, 2021 “last updated” date carried by the Zendesk FAQ articles.

41. The April 2026 Rescission Letter also sets out escalating interest rates and penalties that could be assessed if the $995,751.51 was not returned.

42. As reconsideration requests to the agency were the only available avenue for appeal listed in the April 2026 Rescission Letter, the Summit Inn timely submitted a Request for Reconsideration of the April 2026 Rescission Letter on May 15, 2026. The Request for Reconsideration explained that the Summit Inn is not a hotel or motel and is an eligible “inn” under the RRF.

43. The SBA subsequently advised that it had reopened the matter for further review.

44. On May 21, 2026, the SBA responded by email, asserting for the first time that “[h]otels are not eligible to receive RRF Awards,” that Summit Inn “ha[d] 94 guest rooms,” and that its tax return reflected NAICS code 721110—the code assigned to hotels and motels—while reiterating that a restaurant located within a hotel is ineligible absent a separate EIN. A true and correct copy of this exchange is attached hereto as **Exhibit F.**

45. None of these grounds—NAICS classification or room count—appears in the Application, or in the April 2026 Rescission Letter or in any governing RRF guidance.

46. Nor does the Summit Inn have a restaurant located within a hotel or motel. The Summit Inn is an inn.

47. The Summit Inn requested a meeting with SBA staff to better understand the agency's position, and on June 2, 2026, the SBA responded by reiterating its hotel/motel and shared-EIN rationale and invoking, for the first time, what it described as a "primary purpose" requirement under which eligibility requires that "the primary purpose of the entity must be to serve prepared food and beverages"—a standard the SBA characterized as applying "in addition to the 33% food/drink sales standard." *See* Ex. F, May 21, 2026 email.

48. The "in addition to the 33% food/drink sales standard" formulation appears only in the SBA's June 2, 2026 email and in no published RRF program document. The SBA first articulated it in correspondence in 2026, five years after the Award.

49. The June 2, 2026 email's "primary purpose" standard also contradicts the SBA's own definition of that phrase. The RRF Program Guide provides that an entity satisfies the statutory "primary purpose" requirement if it has at least 33% in 2019 on-site sales to the public—a test the Summit Inn satisfies at 48%. The June 2, 2026 email applies a different, unpublished standard.

50. On June 5, 2026, the Summit Inn, through counsel, provided a detailed response setting forth its high-level positions that it is eligible and seeking clarification of the SBA's ruling. A true and correct copy of Summit Inn's June 5, 2026 email is attached hereto as **Exhibit G**.

51. The Summit Inn also requested a meeting to discuss the SBA's position and a ninety-day deferral of any collection or repayment efforts to permit a meaningful exchange of information. *Id.*

52. The SBA did not substantively respond to the arguments raised in Summit Inn's June 5, 2026 email and did not grant Summit Inn's request for a meeting or a temporary deferral of collection.

53. Instead, on July 1, 2026, the SBA issued a second rescission letter (the "July 2026 Rescission Letter"), reaffirming the April 2026 Rescission Letter and making another demand that the Summit Inn repay the Award in full. A true and correct copy of the July 2026 Recission Letter is attached hereto as **Exhibit H.**

54. The July 2026 Rescission Letter did not address the NAICS-code, room-count, or "primary purpose" theories the SBA had raised in its intervening correspondence, did not respond to the historical and factual showing in Summit Inn's June 5, 2026 letter, and did not act on Summit Inn's requests for a meeting or a temporary deferral of collection.

55. The July 2026 Rescission Letter also sets out escalating interest rates and penalties that could be assessed if the $995,751.51 was not returned.

56. As reconsideration requests to the agency *again* were the only available avenue for appeal listed in the July 2026 Rescission Letter, the Summit Inn timely submitted a Second Request for Reconsideration of the July 2026 Rescission Letter on July 30, 2026.

57. The second reconsideration request demonstrated again that the Summit Inn satisfies all eligibility criteria as an "Inn," specifically contemplated for an award in the ARPA and having more than 33% of its revenue from 2019 derived from food and beverage service.

58. The second reconsideration request argued, among other things, that the Summit Inn is an eligible entity under the ARPA and all applicable, contemporary guidance.

59. The SBA's own guidance draws no distinction between inns and hotels based on room count or NAICS classification, and adopting such a distinction would write inns with any lodging component out of the RRF statute altogether.

60. The Summit Inn is not an inn as a branding effort; it satisfies every historical and common understanding of the term. Built along the National Road in 1907, with its original horse-and-carriage stables, masonry fireplaces, ground-floor tavern and bar, and guest rooms above its public rooms, the Summit Inn is a paradigmatic inn: a business offering "a hearth, a meal, and a bed."

61. There is no "primary purpose" standard under the statute and guidance as "inns" are expressly eligible if they satisfy the 33% gross receipts for food and beverage rule.[1]

62. The SBA responded to the Second Reconsideration Request with an email, repeating that the Summit Inn was not an eligible entity because "Hotels and Motels" are not eligible for RRF grants, that only "eligible businesses" could use the 33% rule, and that "SBA policy is that the restaurant must have it [sic] own separate EIN." A true and correct copy of this email exchange is attached hereto as **Exhibit I**.

63. The SBA's post-award RRF recovery campaign followed SBA Office of Inspector General ("OIG") Report 24-09, dated March 26, 2024 (the "OIG Report"). According to the July 2026 Rescission Letter, the SBA identified the asserted eligibility issue during its

---

[1] Assuming *arguendo* that the SBA's new post-award, retroactive requirement that an "inn" must meet some second primary purpose test in addition to the 33% threshold, which is plainly inconsistent with the ARPA, the application, the SBA's prior award, and the contemporaneous guidance at the time of the award, there is nothing in the administrative record demonstrating that the SBA performed any analysis to support its conclusion that the Summit Inn failed this standard. The SBA simply noted the existence of guest rooms and a NAICS code, without evaluating the Summit Inn's actual operations, revenue composition, staffing, or patronage. Even if this new, inconsistent retroactive standard applied or could apply, the Summit Inn still would be eligible because the largest portion of the Summit Inn's revenue, employees, and day-to-day operations is devoted to providing food and beverage service to the public. Its food and beverage revenue (approximately 48%) exceeded its lodging revenue (approximately 43%), and approximately 75% of Summit Inn's staff support its food and beverage operations.

review of the Summit Inn's Post Award Report. Recommendation 3 of the OIG Report directs the SBA to: "Review the 3,443 applicants awarded funds totaling $376,583,100 that self-certified as a brewery or inn, to determine if they met the 33 percent onsite sales eligibility requirement and recover any funds from applicants that did not meet the requirement." In its written response to the OIG Report, the SBA committed to reviewing whether inns "met the 33 percent onsite sales requirement." The words "hotel," "motel," "resort," "NAICS," and "tax identification" do not appear anywhere in the OIG Report. The Summit Inn met the 33 percent onsite sales requirement—the only test the OIG named—at 48 percent. The OIG recommended the review, the SBA committed in its own response to determining whether inns "met the 33 percent onsite sales requirement," and the recovery effort followed. Yet as applied to the Summit Inn, the SBA never applied the test its Inspector General identified and that the SBA's guidance directed should apply. *See* Ex. H, July 2026 Rescission Letter.

64. By notice on SBA Form 1201 (Rev. Aug. 2025) dated September 28, 2026, and received by the Summit Inn on October 2, 2026 (the "September 2026 Notice"), the SBA issued its final agency decision. A true and correct copy of the September 2026 Notice and accompanying statement is attached hereto as **Exhibit J.**

65. The September 2026 Notice accompanied a statement showing $995,751.51 now due on loan number 4881509002, with a payment due date of July 31, 2026. The September 2026 Notice states that it is "official notice" that the SBA intends to refer the debt to the U.S. Department of the Treasury ("Treasury") for offset and other collection actions, and it warns: "THIS IS THE ONLY NOTICE YOU WILL RECEIVE BEFORE YOUR DELINQUENT DEBT IS SENT TO TREASURY." The September 2026 Notice gives the Summit Inn 60 days from the notice to pay the debt, agree to a repayment plan, or present evidence that the debt is

not past due or not legally enforceable. It also references an optional hearing before the SBA's Office of Hearings and Appeals ("OHA") under 13 C.F.R. Parts 134 and 140 concerning administrative and salary offset, to be requested within 15 days of receipt.

66. The July 2026 Rescission Letter states that a penalty of 6 percent will be added once the debt is more than 90 days past due. Measured from the July 31, 2026 payment due date, that penalty would attach on or about October 29, 2026.

67. The September 2026 Notice states that the SBA intends to refer the debt to Treasury for administrative offset and other collection actions after the 60-day period expires on or about November 27, 2026. On information and belief, the SBA has referred other disputed RRF recovery debts to Treasury within approximately three months of the initial notice.

68. On information and belief, the SBA is already using disputed RRF recovery debts to deny affected businesses other federal benefits. If the disputed debt is treated as a delinquent federal debt, the Summit Inn faces a real risk of denial of other federal assistance. Those harms could not be undone by a later judgment in the Summit Inn's favor.

**ADMINISTRATIVE RECORD**

69. The administrative record includes, at a minimum, Plaintiff's RRF application and supporting documentation, the SBA's approval of the Award, the parties' communications concerning Plaintiff's business structure and EIN, Plaintiff's post-award submissions, the April 2026 Rescission Letter, Plaintiff's first Request for Reconsideration, the SBA's subsequent correspondence, Plaintiff's June 5, 2026 submission and supporting materials, the July 2026 Rescission Letter, Plaintiff's Second Request for Reconsideration, the SBA's response thereto, the September 2026 Notice and accompanying statement, and all materials considered by the agency in reaching its final determination.

70. To the extent the SBA contends that additional materials, analyses, policies, guidance, or records support its determination, Plaintiff requests that those materials be included in the administrative record and produced in accordance with applicable procedures governing review of agency action.

**COUNT I – VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

**(5 U.S.C. § 706)**

71. The Summit Inn re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

72. Defendant SBA accepted the Summit Inn's application, granted the funds in question, accepted the Summit Inn's post-award report, and has not disputed its statements that more than 33% of the revenue received at the Summit Inn was derived from the sales of food and beverages.

73. Despite this, Defendant SBA now asserts, without explanation, that the Summit Inn is not in fact an "Inn" for purposes of the RRF program, but is instead a "hotel/motel," while refusing to provide any definition of the difference between these two terms (other than the fact that an "Inn" is an eligible entity, while a "hotel/motel" is not).

74. The SBA's determination that the Summit Inn was ineligible for the grant and its demand for return of grant funds have been described by the SBA as a final decision, were consummated by the September 2026 Notice announcing the SBA's intent to refer the debt to Treasury for offset and other collection actions, and constitute final agency action.

75. For the reasons set forth above and in the correspondence between the parties, the Summit Inn was an eligible entity (i.e., an "Inn") that met all known requirements as set forth in the SBA's Application, RRF Program Guide, and other program materials.

76. The SBA's determination of ineligibility is based on shifting, novel claims that an inn that provides both lodging and food/beverage services, with at least 33% of its revenue from the food/beverage services must meet additional, unstated eligibility requirements imposed years after the award including (a) it must consist of two independent businesses with their own EINs is contrary to the plain language of the program guidance, and is not supported by any statute or regulation; (b) it must not have an NAICS code for a hotel/motel; (c) it may not have guest rooms; and (d) it must also satisfy a "primary purpose" standard "in addition to": the 33% Food and Beverage Sales threshold—a standard that appears only in the SBA's June 2, 2026 email and in no published program document.

77. The RRF Program Guide contains the statutory "primary purpose" phrase and defines it: an entity satisfies the "primary purpose" requirement if it has at least 33% in 2019 on-site sales to the public. The Summit Inn satisfies that test, with 48% of its 2019 gross receipts derived from food and beverage sales. The SBA's June 2, 2026 email applies a different, unpublished standard that contradicts the agency's own definition.

78. There is no rational basis for the distinction in light of the ARPA statute, the SBA Program Guide, and the FAQ Guidance, which provide the relevant criteria for an "inn" (the 33% Food and Beverage Sales Threshold) without defining a methodology for distinguishing an inn from a hotel. Nor does the Zendesk FAQ supply any such methodology: it is an undated SBA help-desk knowledge base page whose one-sentence hotel/motel article defines none of its terms, and no Internet Archive capture shows what it said, or whether it existed, during the application window in which the Summit Inn applied (May 3, 2021) and was approved (May 20, 2021).

79. The SBA's position that the existence of overnight accommodations necessarily transforms an inn into a hotel cannot be reconciled with the guidance at the time of award, the

ordinary meaning of the term, or Congress's decision to include "inns" among the categories of businesses eligible for RRF assistance. By definition, inns provide lodging. If the mere presence of guest rooms were sufficient to disqualify an establishment as an inn, then virtually every inn would be excluded from the program, rendering Congress's inclusion of inns as eligible entities superfluous, violating the canon that statutes should be construed to give effect to every word.

80. The SBA's final determination that the Summit Inn was ineligible for the RRF grant was arbitrary, capricious, an abuse of discretion, and not in accordance with applicable law.

81. The SBA's rescission and recovery action is also in excess of statutory jurisdiction, authority, or limitations, and short of statutory right, within the meaning of 5 U.S.C. § 706(2)(C). An agency has only the powers Congress confers on it, and Section 5003 of ARPA confers no general power to claw back RRF grants after they have been awarded, disbursed, and spent.

82. Section 5003 of ARPA directed the SBA to award grants to eligible entities, including inns, 15 U.S.C. § 9009c(a)(4)(A), and specified the uses to which those grants may be applied. Congress addressed the return of grant funds in only two narrow circumstances: where an eligible entity fails to use all of its grant funds for allowable expenses, or permanently ceases operations, on or before the last day of the covered period. In either case, the entity must return only those funds it did not use for allowable expenses. 15 U.S.C. § 9009c(c)(6).

83. Neither circumstance applies here. The Summit Inn did not cease operations; it remains open and operating today. The Summit Inn used its grant for eligible expenses, submitted a Post Award Report accounting for the award, and the SBA accepted that report. The SBA has never alleged that the Summit Inn misused any portion of the grant, failed to account for it, or spent it outside the permitted categories.

84. By expressly providing for the return of funds in those two limited circumstances, Congress excluded others. Congress did not authorize the SBA to rescind a fully disbursed and properly spent grant years after the covered period ended on the basis of a post hoc reclassification of the recipient's business type, and nothing in Section 5003 authorizes the SBA to convert such a grant into a debt owed to the United States.

85. Nor has the SBA identified any statute or regulation authorizing its recovery effort. None of the April 2026 Rescission Letter, the SBA's May 21 and June 2, 2026 emails, the July 2026 Rescission Letter, the SBA's response to the Second Request for Reconsideration, or the September 2026 Notice cites any statutory or regulatory source of authority to rescind the Award or demand its repayment.

86. Because the SBA lacks statutory authority to rescind the Award and demand its return, its determination and repayment demand, and every collection, offset, referral, and debt-reporting action premised on them, should be held unlawful and set aside under 5 U.S.C. § 706(2)(C).

87. The SBA failed to properly apply the eligibility regulations to the Summit Inn's circumstances or explain its rationale for determining that the Summit Inn was not an eligible "Inn" under the RRF program, and its demand for return of all grant funds is based on its erroneous determination of ineligibility.

88. The SBA's recovery action against the Summit Inn also departs from the review the SBA committed to undertake. The OIG Report directed the SBA to determine whether inns "met the 33 percent onsite sales eligibility requirement" and to recover funds only from applicants that did not meet it. In its response, the SBA committed to conduct exactly that review. The Summit Inn met that requirement at 48 percent, yet the SBA never applied that test

and instead relied on hotel/motel, NAICS, room-count, and tax-identification criteria that appear nowhere in the OIG Report.

89. The SBA failed to consider and respond to the relevant evidence and arguments presented by Summit Inn during the reconsideration process, including Summit Inn's detailed submissions and its requests for a meeting.

90. The SBA's failure to meaningfully engage with the evidence and arguments presented during the reconsideration process constitutes a separate procedural deficiency under the APA.

91. The SBA's imposition of novel eligibility criteria, including a "primary purpose" test applied to enumerated inns, a room-count limitation, NAICS-code-based disqualification, and a separate EIN requirement for inns, constitutes the adoption of new substantive rules or policy that were not promulgated through notice-and-comment rulemaking procedures required by 5 U.S.C. § 553.

92. These criteria were not articulated in the ARPA, the RRF Program Guide, the SBA's published FAQs, the application materials, or any other contemporaneous guidance, and their retroactive application to previously approved awards are inconsistent with the APA's requirements for agency rulemaking.

93. The Summit Inn has exhausted its available remedies with the SBA, and the SBA's action in demanding the return of all grant funds is final agency action for which there is no other adequate remedy.

94. The September 2026 Notice concludes the SBA's eligibility determination. The OHA hearing referenced in the September 2026 Notice concerns only the mechanics of Treasury offset under 13 C.F.R. Parts 134 and 140. It is not a review of the RRF eligibility determination,

and it is not mandated by statute or regulation as a prerequisite to judicial review of that determination.

95. The SBA's eligibility determination marks the consummation of the agency's decision-making process, determines the Summit Inn's rights and obligations, and gives rise to legal consequences, including the threatened referral of the debt to Treasury. It is therefore final agency action.

96. Pursuant to 5 U.S.C. §706, the SBA's agency action should be held unlawful and set aside.

**COUNT II – DECLARATORY RELIEF**

97. The Summit Inn re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

98. The SBA has sent the April 2026 Rescission Letter, the July 2026 Rescission Letter, and the September 2026 Notice demanding the return of all of the grant funds the Summit Inn received, with significant and escalating consequences if the demand is not met, including the threatened referral of the debt to Treasury for offset and other collection actions.

99. There exists an actual controversy between the parties regarding the Summit Inn's eligibility for the RRF grant it was awarded.

100. The controversy is of sufficient immediacy to warrant declaratory relief, and a judicial declaration will resolve the dispute over the Summit Inn's eligibility.

101. For the reasons set forth above, the Summit Inn requests a declaratory judgment confirming the Summit Inn's status as an "eligible entity" under the RRF program and determining that the demand for return of grant funds received by the Summit Inn was invalid and unlawful.

## PRAYER FOR RELIEF

WHEREFORE, the Summit Inn respectfully requests that this Court:

1. Enter an order pursuant to 5 U.S.C. §706 setting aside Defendant SBA's determination that the Summit Inn was ineligible for the RRF grant as arbitrary, capricious, an abuse of discretion, and not in accordance with law;

2. Enter a declaratory judgment against Defendant pursuant to 28 U.S.C, §2201 that the Summit Inn was eligible for the RRF grant under applicable law and program guidance, and that the demand for a return of those funds was invalid and unlawful;

3. Stay any accrual of interest or penalties and enjoin Defendants, and anyone acting in concert with them, from collecting or attempting to collect the RRF grant funds, including by assessing interest, penalties, or administrative costs, referring the debt to Treasury or any other agency for offset or collection, or treating the asserted debt as delinquent for purposes of any federal loan, grant, benefit, or program, pending final resolution of this action;

4. For such other and further relief as the Court deems proper.

DATED this 9th day of October, 2026.

By: *s/ Daniel P. Wolfe*
Daniel P. Wolfe
Pa. I.D. No. 326406
REED SMITH LLP
(Firm I.D. No. 234)
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: 412-288-3131
Email: dwolfe@reedsmith.com

Daniel Z. Herbst (*pro hac vice forthcoming*)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone: 202-414-9200
Email: dherbst@reedsmith.com

*Counsel for Plaintiff*